FOWLER *v.* DE LANCE.

1. SPECIFIC PERFORMANCE—CONTRACT—EVIDENCE — SUFFICIENCY.
   On a bill for specific performance of a contract to convey a
   farm in consideration of support and care, evidence exam-
   ined, and *held*, not sufficient to show that the contract
   claimed was ever made.

2. SAME—BILL—FAILURE OF PROOF—ACCOUNTING.
   Where, on a bill for specific performance of a contract to con-
   vey land in consideration of support and care, complainant
   fails of proving the contract, but shows the expenditure of
   money in betterments on the land and in caring for and bury-
   ing decedent, he is entitled to an accounting of such disburse-
   ments.

Appeal from Kent; Perkins, J. Submitted November
13, 1906. (Docket No. 111.) Decided December 17,
1906.

Bill by Albert F. Fowler and Elizabeth Fowler against
Eliza De Lance, Martha Noble, and Gustave A. Wolf,
guardian ad litem of Ethel Noble, an infant, to enforce
the specific performance of a land contract. From a
decree for complainants, defendant Wolf appeals. Re-
versed, and remanded.

The question in this case is whether a contract was
made between complainants, who are husband and wife,
on the one part, and Joseph B. Noble, deceased, on the
other, by the terms of which complainants were to move
upon property described as the northeast quarter of the
northwest quarter of section 30, in Cannon township,
Kent county, Mich., owned and occupied by said Joseph
B. Noble, to care for him during his life, pay the expenses
of his last sickness and burial, and receive a conveyance
of the said property, running to them jointly, as compen-
sation for such care. It is important, in view of the argu-

ment made in this court, to set out with some particularity the averments in the bill of complaint, verified by the complainants on the 9th of March, 1901. The story told in the bill is, in substance and effect, the following:

The mother of complainant Albert F. Fowler intermarried with Joseph B. Noble, complainant at that time being about six years of age, the mother dying in April, 1897. Two children were born of the marriage, both of whom died before either of their parents, one of them leaving issue, a daughter, who, it is averred upon information and belief, died before said Joseph B. Noble. Joseph B. Noble died on the 30th of September, 1900, leaving as his sole heirs two sisters, the defendants De Lance and Noble. After the death of his wife, said Joseph B. Noble, living alone on his farm, frequently requested complainants to move into his residence on the farm, take charge of the farm, care for, nurse, and support him during his natural life, and provide the expense of his funeral after his death, and offered to convey to complainants jointly the said farm and all property belonging to him thereon.

Complainants agreed, on or about July 16, 1899 (the proofs show that this date should have been averred as of July, 1900), to leave their then place of residence, move on to said farm, take charge of the same, care for, nurse, and support the said Joseph B. Noble in a becoming manner during the remainder of his natural life, and pay all necessary cost and expenses of his funeral after death, said Noble promising and agreeing that he would convey to complainants jointly the said farm and all property belonging to him thereon. Pursuant to this agreement, complainants moved upon, and took charge of, the farm, cared for, supported, and nursed said Noble in a becoming manner, and, after his death, provided his body a decent and respectable burial and assumed the expenses thereof, in full completion of their said contract and agreement. After complainants entered upon the performance of the agreement and during the lifetime of said Noble, they frequently pressed him to carry out his

agreement and to convey to them by good and sufficient conveyance or agreement in writing said farm and property but he delayed entering into any written agreement until shortly before his death, when he made out, under his own hand, and signed, a memorandum in writing, delivering the same to complainants, said memorandum reading:

"I give my property to Fred and wife for my support while I live.

"JOSEPH NOBLE."

(The original of the memorandum referred to is returned into this court for inspection.)

Complainants have frequently communicated with the said sole heirs at law of said Noble regarding their right to the premises, and received letters fully acknowledging their right to the property, but the existence of a grandchild of the said Joseph B. Noble remaining in doubt they have been unable to secure a full and complete title to the premises by deed of conveyance to them from said heirs, and those heirs, on account of the uncertainty of the death of said child, refuse to convey unless a settlement with said child is first secured. Being therefore without remedy except in a court of equity, the bill is filed against the sisters of said Noble and said unknown granddaughter, if alive, and it is prayed that complainants may be decreed the lawful possessors and owners in fee simple of the premises.

The infant granddaughter, the only living descendant of Joseph B. Noble, by her guardian, answered the bill of complaint, asking for affirmative relief by way of an accounting for the rents and profits of the premises and for waste committed, and that the complainants convey to her their alleged claim and surrender possession of the premises. Among other defenses set up is the one that, at the time of the alleged gift of said premises to complainants, said Joseph B. Noble was mentally incompetent to dispose of his property and was under the undue influence of the complainants.

In the court below a decree was entered for the specific performance of the contract, and the infant defendant is ordered to execute and tender to complainants a deed of conveyance, conveying all her claim to said premises.    As to the defendants De Lance and Noble, the bill is dismissed. The guardian ad litem has appealed from this decree.

*John W. Powers*, for complainants.

*Walker & Fitzgerald*, for appellant.

OSTRANDER, J. (*after stating the facts*).    Having reached a conclusion opposed to that arrived at in the court below, in which court the witnesses were presented, with such advantage as their appearance and manner of delivering their testimony affords, it is proper to state with some particularity the reasons for concluding that the complainants have not made a case.    It is clear that the complainants, on or about July 26, 1900, moved upon the premises in question and thereafter until the death of Mr. Noble, in September of the same year, made their home there and kept his house, Mrs. Fowler especially being kind to him.    It is proved that, after his death, they buried him, paying the funeral expenses, amounting to about $88, and some small store bills, amounting to $14 or $15.    When complainants first rested their case, no evidence had been introduced except the written memorandum which has been referred to, to establish the contract set out in the bill of complaint or to prove by what understanding or arrangement complainants occupied the farm.    The witnesses who had been sworn were the complainants, Huntley Russell, James Beeson, and Earl Barker.    We need not look into the testimony of complainants for competent proof of the alleged agreement.    The testimony of Mr. Russell is to the effect that Mr. Noble said to him that, if he could get a person to come there and take care of him as long as he lived he could have the farm, and he asked if witness knew of a proper person.    The testimony of Mr. Beeson, who is a son of Mrs.

Fowler, is that he found the paper writing, to which reference has been made, in a little box used by Mr. Noble as a tool box, with awls and things of that sort in it, in the bottom of the little box in Noble's trunk. This witness was not at the farm while complainants and Noble lived there. He went there after the death of Mr. Noble and after his burial. He found the paper, he says, in the presence of Mr. Fowler. There were letters in the trunk. He testified that the paper writing is, in his opinion, in the handwriting of Mr. Noble. The testimony of Earl Barker is to the effect that Mr. Noble said to him:

" I have got good care. Fred and Elizabeth are taking care of me."

The defense having offered testimony, and the cause having proceeded to argument, it was, after an interval of some days and upon application of counsel for complainants, reopened, and, coming on to be heard, over the objection of counsel for defendants, John Cady and William Hyser, the physician of Mr. Noble, William Koning, and Mary Rideout were produced as witnesses for the complainants. Up to this point, it seems clear that the case for complainants was rested, and was intended to be rested, upon proof of the expressed desire of Mr. Noble that some one should live with him, and that such a person might have the farm, upon proof that complainants had gone to live with him, and upon the writing as evidence of a contract actually made. The defense had, however, attacked the genuineness of the writing, had produced a petition, verified by complainant Albert F. Fowler on September 10, 1900, filed in the probate court for the county of Kent in the matter of the estate of Joseph B. Noble, in which he describes himself as stepson of Joseph B. Noble and a friend interested in his welfare, and stated that said Noble was of the age of 78 years or thereabouts, and, by reason of his advanced age and hard manual labor, was reduced to a state of incompetency—

" And is unable to care for himself or for his necessary

wants, nor is he able to care for and manage his estate hereinbefore mentioned; that said estate consists of a farm of 40 acres of land in said township, and of cows and swine; that, without the intervention of this honorable court in the matter, said farm and said personal property will be lost to said Noble and become absolutely worthless and insufficient for his care and support; that, at the instigation of said Noble, and under his express wish and desire, your petitioner and his wife moved on to the farm and looked after the management thereof until the present time, having commenced occupation on the 26th day of July, 1900; that they have had the care and management of said estate since that time, and have looked after said Noble and cared for him in the best manner possible; that, owing to the mental and physical condition of said Noble, your petitioner does not desire to remain longer on said place unless matters are so arranged that he and his said wife can be assured of their money, irrespective of the promises and assurances of said Noble; that said Noble is feeble and entirely incompetent, mentally and physically, to care for himself or his estate, and is incompetent mentally and physically to have the charge, custody, and management of his person and estate; and that it is necessary that a guardian be appointed of his person and estate for the reasons hereinbefore set forth, and to save same for his care and support for the remainder of his life."

The names of interested persons are said to be ——— Noble, grandson, 10 years old, Sand Lake, Mich., besides the two sisters who have been mentioned. They had shown Mr. Noble's recollection of and fondness for his granddaughter, his hostility to his stepson; that Mr. Noble died on Sunday and was working about his farm on the previous Saturday, husking corn; that the farm was let on shares for the year 1900, Noble to harvest his share of crops, which consisted of corn and potatoes. The paper writing is a sheet of small note paper, folded once. Upon its face is the alleged promise or agreement. On the outside is written, "July 24, 1900." "Will." "$25 to grandchild when 18 years old." Mr. Fowler did no work on the farm previous to the death of Mr. Noble. The complainant Mrs. Fowler continued the business of a

laundress to the amount of $8 or $10 a week. Of the improvements claimed to have been made upon the place after the death of Mr. Noble, the well, which cost $22, was paid for by trading one of the three cows. The other two were sold for $25 apiece. There was one hog left when Mr. Noble died. That was killed by complainants. The house moved upon the place cost $30. The corn and potatoes, Noble's share of the crops, were used by complainants. They have cut some timber on the place and sold some ties since the death of Mr. Noble. Six dollars and some cents in money, which Mr. Noble left at his death, complainants had.

It was with the case in this situation that the additional witnesses were produced. John Cady is a brother-in-law of Mrs. Fowler. While he varies his testimony somewhat, he does testify that, several weeks before the time he was on the witness stand, he told Mrs. Fowler's daughter that he didn't know anything about the matter in particular, didn't think he could do them any good, but that he did tell her just what he told on the witness stand. The effect of his testimony, in any event, is that Mr. Noble told him one day that he was looking for complainants to come, and had made arrangements with them to come and take care of him as long as he lived. He did not tell what the arrangements were or anything further. The testimony of the physician is to the effect that he told Mr. Noble, in the summer of 1900, that he should have some one to live with and care for him; that later, Mr. Noble having told him that Mrs. Fowler was good to him, he said that it would be proper for him to provide some means for her getting her pay, to which Mr. Noble replied that he had it fixed. How, or in what manner, he had it fixed was not stated. His testimony that Mr. Noble was sick for four weeks before he died is directly disputed. The witness Koning says that Mr. Noble told him that he was getting old and would have to have help, and so Mr. Fowler and his wife consented to come and help; that Noble further said that he had no further use for the place

after he was dead, so they could have the place for taking care of him. On cross-examination, he stated that this conversation was about a month before the death of Mr. Noble; that they were sitting on the lawn in front of the house when it occurred, visiting; that Mr. Noble said Fred and his wife would take care of him; he could not pay them in any other way because he had no money; they would have the place; that he remembered nothing upon any other subject being said in that conversation.

We are not satisfied, by the evidence, that the written memorandum was executed and delivered in evidence or in performance of the alleged parol agreement. We are not satisfied that complainants, or either of them, ever saw the memorandum, if it is genuine, until after the death and burial of Mr. Noble. If the facts set out in the petition in the probate court are true, no valid arrangement with Mr. Noble, whether the one averred or another, is proved. If we assume that complainant Albert is an ignorant man, as is intimated in the brief, and did not rightly appreciate the statements contained in said petition, his action is nevertheless significant as showing whether he was relying upon, and considered himself bound by, the agreement which he asserts was made with Mr. Noble. It is unnecessary to enter upon a discussion of the question of the genuineness of the paper writing. Counsel for complainants, who, in his main brief, does not refer at all to the written memorandum, insists that, independent of that memorandum, enough appears to make a case for relief; that, if there are variances between the bill and the proofs, they are circumstantial and do not change the substantial merits. He cites and relies upon *Taft* v. *Taft*, 73 Mich. 502. Discrediting, as we do, the fact that the written memorandum was executed for the purpose of carrying out a promise to convey lands to the complainants jointly, that it was executed after repeated requests on the part of complainants to Noble to carry out the agreement to convey, that it was delivered, when executed, to the complainants or

to either of them, it is both natural and reasonable that we should also discredit the alleged fact that complainants moved upon the farm and did whatever they are shown to have done there in part performance of the contract set out in the bill of complaint. The reasoning of the opinion in the case of *Taft* v. *Taft* cannot be applied to this case. The evidence independent of the written memorandum does not clearly and satisfactorily prove the contract set out in the bill. Moreover, it does not appear that complainants made any such change in their course of life, habits, or business, even if we assume that the changes which were made were in part performance of some contract with decedent, as requires the court, in the exercise of a sound discretion, to grant them the relief prayed for. It is clear that all they did is capable of pecuniary measurement. *Webster* v. *Gray*, 37 Mich. 37.

"The ground on which the court acts at all, in these cases, is fraud, in refusing to perform after performance by the other party." *McMurtrie* v. *Bennette*, Har. Ch. (Mich.) 124.

See, also, *Webster* v. *Gray*, supra. In any view of the case, complainants have failed to convince us of their right to the relief prayed for. There is no reason, however, why an accounting should not be had in which the complainants may be allowed their disbursements, whether for betterments of the property or for the expenses of the sickness and burial.

The decree is reversed, and a decree will be entered in this court denying complainants the relief prayed. The record will be remanded, with direction to take an account. Defendant Ethel Noble will recover costs of both courts.

Carpenter, C. J., and McAlvay, Montgomery, and Hooker, JJ., concurred.